## DUNHAM v. DRAKE.

1. One convicted of treason, by adhering to or joining the British armies, whose estate is forfeited, is still answerable for his former debts.

2. The acts of assembly which give the creditor a right to demand payment of his debt, out of the proceeds of the forfeited estates, were designed for the benefit of the creditor only, and do not stand in the way of a recovery against the original debtor.

This was an action of debt, brought by Dunham against Drake, on certain bonds and promissory notes dated in 1773, 1776, and 1783. To the declaration, which was in the customary form, the defendant pleaded—1st. *Nil debet.* 2d. He pleaded specially, that he was at the time of making these writings a resident of the State of New Jersey, and possessed of property sufficient to discharge these claims; that afterwards, under different acts of assembly, which were particularly referred to in the plea, he was convicted regularly and legally of adhering to the public enemies, and all his estate, real and personal, became forfeited in consequence of his treason, and was seized and sold by the commissioners of forfeited estates. That the estates thus sold, and the proceeds of the sales paid into the public treasury, were more than sufficient to discharge all the plaintiff's claims against him. That the laws which declared these estates to become forfeited, and under which they were actually sold and seized, and, also, the act of December 23d, 1783, declares that the estates thus forfeited and sold should be liable, in the first place, to the payment of all the debts and demands against the person and estate of the person or persons thereby convicted. That, therefore, the plaintiff might and should have made his demands regularly, so as to have them paid out of the proceeds of the sale of his forfeited estates. Wherefore he prays judgment, &c.

To this second plea there was a general demurrer, and a joinder in demurrer; and the first plea having been aban-

[316]-doned, the case was submitted to the court without argument.

KINSEY, C. J.

(After stating the circumstances of the case as they appeared on the record.)

The question then arising on this statement of the case is, whether a debtor, whose estate has been confiscated to the use of the state, is discharged against his creditor.

This cause has been submitted to the court without argument, as is too frequently the case. As it is a matter of much importance, and altogether a novel case, we still would be desirous of hearing it argued, should either party be dissatisfied with the present opinion of the court, and apply for an argument during the present term.

We have looked into all the acts mentioned or referred to in the plea. The act of April 18th, 1778, ( *Wilson's Laws* 43, § 12,) authorizes the commissioners to apply the whole estate to the payment of the just debts of the offenders. That of December 11th, 1778, (*Ib.* 67, § 16,) gives the Court of Common Pleas a power of settling demands against the estate, provided application be made within one year, and authorizes the treasurer to pay them; but no claims to be admitted but such as existed at or before the time of the offence committed. The acts of December 10th, 1783, (*Ib.* 354, § 5,) and December 23d, 1783, (*Ib.* 384, § 6,) were passed, the first to give mortgages a preference, the latter to allow a further time to creditors to make their demands; and it declares that if the demands are not brought forward within that time the estate shall be discharged from them.

From a view of the whole of these acts, it appears that the single object in view in these different sections was to favor creditors and to give them a remedy against the estate which otherwise they would not have had. We find nothing in any of them that has a tendency to discharge the person of the debtor, or to exonerate him from responsibility. It is in fact impossible to suppose that the legislature had it in contem-

Dunham v. Drake.

[317]-plation to show any favor to the offender, or to discharge the force of the contract as to him. (a)

In fact, this being an interpretation which goes to punish the creditor, impairs the validity of the contract, diminishes rights which he before enjoyed, and is contrary to the obvious design of the legislature; nothing but express words, or a most unequivocal intention, would justify the court in lending to it their sanction.

The question, therefore is, simply, whether a conviction of this kind, and a forfeiture of all the property of the offender, has the effect of putting an end to all claims of creditors. The case of *Ramsay* v. *M'Donald*, (b) *Foster* 61, fully settles the point that, a person being convicted of a crime by which he forfeits his life and estate, is still personally liable to civil suits, wherefore we think the plaintiff ought to have judgment.

Judgment for the plaintiff.

(a) In *Folliott* v. *Ogden*, 1 *H. Bl.* 123, this question arose, and it was argued that the object of the acts of the legislature was punishment, not reward—to distress, rather than to favor. They did not mean to prevent a creditor from bringing a personal action, or to destroy any contract made by him with the defendant. Lord Loughborough, though favorably inclined to the plea, held it bad in a court of law. "It comes," he says, "as near as it could to a plea of payment, but, in a court of law, nothing short of actual payment is good." In *Wright* v. *Nutt*, in Chancery, reported 1 *H. Bl.* 136, a different doctrine was laid down. The distinction is drawn between the rules which would be adopted in courts of law and equity; in the latter, the plea is good until the creditor shall make it appear that he had exerted himself to obtain payment of his debt out of the fund which had been appropriated for that purpose. In *Kempe* v. *Antill*, 2 *Br. C. C.* 11, it was held that this was no plea against a loyalist, because such a creditor could not have recovered satisfaction out of this fund. *Holditch* v. *Mist*, 1 *P. Wms.* 695, was a case involving the same principle, but in which national or political feelings cannot be presumed to have entered. In that case the doctrine established by the case in the text was laid down.

(b) See the same case reported in 2 *Wils.* 217, under the name of *Ramsden and another* v. *McDonald*, sanctioned by Lord Loughborough, 1 *H. Bl.* 130.